Erwin J. Shustak (119152)
Thomas C. Frost (185187)
**SHUSTAK FROST & PARTNERS, P.C.**
401 West "A" Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

Attorneys for Plaintiff
IMAGENETIX, INC.

FILED
08 JUL 29 PM 3:02
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: EC    DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGENETIX, INC., a Nevada corporation<br><br>Plaintiff,<br><br>v.<br><br>CETYLMAX, LLC, a Utah Limited Liability Company; FLEXADREN, LLC, a Utah Limited Liability Company<br><br>Defendants. | Case No. 08 CV 1369 LAB WMc<br><br>**COMPLAINT FOR DAMAGES, PERMANENT INJUNCTIVE RELIEF, AND RESTITUTION UNDER 15 U.S.C. §1121; 28 U.S.C. §1338; BUS. & PROF. CODE §17200 AND §17500** |

Plaintiff, IMAGENETIX, INC., alleges in this Complaint for Damages and Injunctive Relief as follows:

### I.
### JURISDICTION AND INTRODUCTORY STATEMENT

1. Jurisdiction is conferred on this court by § 39 of the Lanham Act, 15 U.S.C.A. § 1121, and by 28 U.S.C.A. § 1338.

2. This complaint seeks damages and a permanent injunction against the defendants to prevent unfair competition and ongoing deceptive advertising practices in the false representations of FLEXADREN, LLC, ("**FLEXADREN**") and CETYLMAX, LLC, ("**CETYLMAX**") published in various documents and media, including through postings on

1 Web sites and through radio commercials ("infomercials") that are widely disseminated to the public.

3. Plaintiff is in the business of promoting, licensing, and selling various nutritional supplements and other products, including Celadrin®, a proprietary product available in oral capsule and topical cream form which has been the subject of several scientific studies (hereinafter the "Celadrin® Studies"), the results of which have been published in several peer-reviewed science journals, including the prestigious *Journal of Rheumatology*.

4. The Celadrin® Studies have concluded, *inter alia*, that Celadrin® has been proven to be effective in reducing pain and improving functional performance in certain classes of persons suffering from osteoarthritis. Defendants are in the business of promoting and selling products with a different proprietary formulation that claim to be effective for those who suffer from osteoarthritis. Defendants have cited the Celadrin® Studies as support for claims about their own products, even though their own products are of a different formulation than Celadrin®, and Defendants' products have not been the subject of any published studies whatsoever.

## II

## PARTIES

5. Plaintiff, IMAGENETIX, INC., a Nevada corporation (hereinafter "Imagenetix" or "Plaintiff") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Nevada and duly registered and qualified to do business in the State of California, with its principal place of business at 16935 W. Bernardo Drive, Suite 101, San Diego, California, 92127 until January of 2006, and thereafter until the present at 10845 Rancho Bernardo Road, Suite 105, San Diego, California 92127.

6. Plaintiff IMAGENETIX is and, at all times herein mentioned, was the owner of United States Federal Trademark Registration No. 2,599,153 pertaining to the mark, Celadrin®, and in the business of producing for sale to its retail or wholesale customers a proprietary formulated product known as Celadrin®.

7. Defendant CETYLMAX, LLC, is, and at all times herein mentioned was, upon information and belief, a corporation organized and existing under the laws of the State of Utah with its principal place of business at 891 West Robertson Drive, Building 1, North Salt Lake, Utah 84054, and at all times herein doing business in San Diego, California by way of marketing, advertising, offering for sale and selling its various products, including the product, CetylMax™.

8. Defendant FLEXADREN, LLC, is, and at all times herein mentioned was, upon information and belief, a corporation organized and existing under the laws of the State of Utah with its principal place of business at 891 West Robertson Drive, Building 1, North Salt Lake, Utah 84054, and at all times herein doing business in San Diego, California by way of marketing, advertising, offering for sale and selling its various products, including the product Flexadren™.

III

## FIRST CAUSE OF ACTION

(Against Defendant CETYLMAX, LLC, for Violations of

§ 43(a) of the Lanham Act, 15 U.S.C.A. § 1125)

9. Plaintiff incorporates by reference paragraphs 1-8 above as though set forth in full at this point.

10. This action is brought under § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125.

11. Jurisdiction is conferred on this court by § 39 of the Lanham Act, 15 U.S.C.A. § 1121, and by 28 U.S.C.A. § 1338.

12. Commencing on or about June 1, 2005, and continuing to the present, Defendant **CETYLMAX**, the company, with respect to its product CetylMax™, has promoted said product and placed commercial advertising concerning said product in various media publications, including but not limited to product package inserts, "infomercials" and on their own website. Defendant **CETYLMAX** has thereby and otherwise made statements likely to mislead consumers into believing that Defendant's product, CetylMax™, was "a proprietary matrix of fatty acid carbons" that had been the subject of several studies reported in peer-reviewed journal articles, and the results of those studies had "medically and clinically proven" CetylMax™ to

1  have had numerous beneficial effects on the patients studied.

2      13.    The **CETYLMAX** website indicates a copyright date of 2008 by "CetylMax, LLC", and can be accessed by typing in either "Cetylmax" or "Flexadren" in an internet search engine, or by entering the internet address of http://cetylmax.com/home.php or http://cetylmax.com/faq/php. To those who access the website, the following false statements and misrepresentations appear, which continue to be made as of the date of this Complaint:

    a.    "CetylMax™ is the hottest joint supplement available. With no reported side-effects and so many great benefits, why not try it today?"

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ has been the subject of scientific studies where benefits were found and no side-effects were reported. The truth is CetylMax™ has not been the subject of any such studies.

    b.    "CetylMax's primary nutrient driver is made up of Cetylated Fatty Acids (**CFA**) which are bound in a proprietary matrix of fatty acid carbons which have been scientifically arranged to achieve maximum strength and mobility." (Original Emphasis).

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ is essentially a proprietary and distinct blend of fatty acid carbons which can be called in shorthand **CFA**, and that the product CetylMax™ and the boldfaced initials **CFA** may be used interchangeably when referring to scientific studies. The truth is, in the scientific community, where **other** proprietary and distinct blends of fatty acids have been studied, with published results, the initials CFA have never been associated with the product CetylMax™ and that CetylMax™ itself has not been the subject of any published scientific studies.

    c.    "**CFA** has been studied for its anti-inflammatory properties. These anti-inflammatory properties have been proven to improve the quality of life for the almost everyone who has used the supplement."

This statement is false in that it conveys the false impression, through implication,

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**     4

innuendo or ambiguity, that the product CetylMax™ is "the supplement" which has been studied for its anti-inflammatory properties, and that CetylMax™ has been found to improve the quality of life for those who have used that product. The truth is that CetylMax™ has not been the subject of any such studies but, to the contrary, published studies have found that a competing product, with a different and distinct proprietary blend, namely Celadrin® , has improved the quality of life in patients who have been administered that competing product.

d.      "**CFA, in its topical analgesic cream form contains all-natural ingredients which have been medically and clinically proven to reduce inflammation and pain with no side effects.**"

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™, in its topical analgesic cream form, is the specific product which has been medically and clinically proven, in scientific studies, to reduce inflammation and pain with no side effects. The truth is, CetylMax™ has not been subject to any such studies but, to the contrary, published studies have found that a competing product, with a different and distinct proprietary blend, namely Celadrin® , has improved the quality of life in patients who have been administered that competing product.

e.      "CetylMax™ is currently offered as an oral dietary supplement and as a topical analgesic cream; it's benefits have been proven to perform best when paired with Glucosamine, and has outperformed Chondroitin, MSM, SAMe and many other arthritic medications. (Paragraph) In studies conducted at The University of Connecticut, 100% of osteoarthritic subjects showed significant improvement in just 30 minutes ...."

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ has itself been the subject of scientific studies which have shown CetylMax™ to have out performed rival arthritic medications, and that, in particular, the University of Connecticut study has shown

CetylMax™ to have caused significant improvement in osteoarthritic subjects within 30 minutes of treatment. The truth is that there are no such studies in support of CetylMax™, but to the contrary, the Connecticut study which is cited did not use CetylMax™ on any of its subjects, but instead used a rival and distinctly different product, Celadrin®, and it was the product Celadrin® that was found to have shown a significant effect on osteoarthritic subjects.

f. "How long should I take CetylMax™? Like any joint supplement, one should continue to take it for lasting mobility. In studies, patients saw the most change after 45-60 days of continued use."

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ has itself been the subject of scientific studies which have shown CetylMax™ to be effective for joint mobility, and to be effective in particular for lasting joint mobility after 45-60 days of continued use. The truth is that CetylMax™ has not be shown to have any effect on joint mobility in any studies, but that, to the contrary, the use of a rival product, Celadrin®, has been shown to be effective in several studies on joint mobility.

g. "Care to read more about CetylMax™ CFA? See our CFA Clinical Studies link to the left. CFA has been carefully studied, and that clinical research has been published publicly in such places as The Journal of Rheumatology ( August 2003) and the Journal of Strength and Conditioning Research (2005)."

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ has itself been the subject of clinical studies, and specifically, studies published in The Journal of Rheumatology in August 2003 and the Journal of Strength and Conditioning Research in 2005. The truth is that there are no published studies whatsoever on CetylMax™, and that, to the contrary, the use of a rival product, Celadrin®, has been the subject of studies published in The Journal of Rheumatology in 2002 and 2004, and the Journal of Strength and Conditioning

Research in 2005.

14. Instances of false and misleading statements made on radio infomercials, and on the **CETYLMAX** website at http://cetylmax.com/home.php and on the **CETYLMAX** FAQ website at http://cetylmax.com/faq/php include the following statements made by **CETYLMAX** spokespersons:

a. Radio Infomercial Voice Number One, after previously talking about published studies in the *Journal of Rheumatolgy*:

"Now, the ingredients in CetylMax™ cream have been shown to reduce pain and improve mobility in people suffering from a variety of joint, muscle, and tendon-related ailments. It's also been shown to reduce pain and swelling and increase range of motion."

This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ itself "has been shown to reduce pain and improve mobility" in clinical studies. In truth, CetylMax™ has not been tested in any published studies, and the study referred to in the *Journal of Rheumatology* was done with subjects being given a rival product, Celadrin®, to reduce pain and improve joint mobility.

b. Radio Infomercial Voice Number Two, identified as "Doctor Charles Cochran, DC, specializing in physical therapy and mobility" makes the following statement in response to the posed question, "Doctor, who would benefit most from using **CETYLMAX** tablets and cream?":

"Of course, anyone with any type of 'itis' type conditions....The human body is very complex and it's really capable of its own healing....When the pharmaceutical companies create, synthetically, what the body needs organically, a higher potential of problems exist. Of course, this is what we are finding....So, when taking any kind of natural substance, I would always make sure that the studies have been done, and in this case, the studies have been done and they've been published in some very, very reputable medical journals. The *Journal of Rheumatology*, for instance, is not a nutritional periodical. It's a

1  very prestigious medical journal and the studies are there.... So, the studies are done.

2  CetylMax™ is not only a symptom reliever, it really is a joint building nutrient.

3  Medicine has nothing like this."

4 This statement is false in that it conveys the false impression, through implication, innuendo or ambiguity, that the product CetylMax™ has itself been the subject of clinical studies in reputable medical (not nutritional) journals. Specifically, this statement by "Doctor Cochran" implies that studies have shown that pharmaceutical companies have had higher problems with their arthritic products than CetylMax™, and further that CetylMax™ was the subject of a major study published in The *Journal of Rheumatology* showing that CetylMax™ itself was not only an arthritis symptom reliever, but in fact a joint building nutrient. The truth is, no such studies have been done on CetylMax™ and that, to the contrary, the study referred to in the prestigious medical journal, *The Journal of Rheumatology*, was done on a rival product, Celadrin®.

15. Defendant's statements described in paragraphs 13 and 14 were also false because in fact the studies (hereinafter the "Celadrin Studies") referred to above in the **CETYLMAX** advertisements all involved plaintiff's proprietary product Celadrin®, not Flexadren™, and not CetylMax™.

16. Neither Celadrin®, nor Flexadren™, nor CetylMax™ are generic products: each is a proprietary blend of fatty acids with different formulations and different manufacturing processes, such that claims made for one proprietary product are unsupported and misleading if based on research conducted on a different proprietary product.

17. The President of **CETYLMAX**, Roger LeFevre, who is also President of **FLEXADREN**, has admitted that Celadrin® and CetylMax™ are not generic products, but that each is a distinct proprietary blend of fatty acids with different formulations.

18. The false statements and misrepresentation in commercial advertising or promotion, as referred to with specificity above, were disseminated by **CETYLMAX** to viewers of its website and listeners of its radio infomercials, which viewers and listeners were actually deceived or tended to be deceived by it.

19. The false statements and misrepresentation in commercial advertising or promotion, as referred to with specificity above, were disseminated by Defendant **CETYLMAX**, to viewers of its website and listeners of its radio infomercial in a manner which is and was likely to influence the purchasing decisions of the persons to whom it was disseminated.

20. The false statements and misrepresentations referred to above injured Plaintiff by causing Plaintiff to lose customers and sales, resulting in business losses in an amount no less than $1,000,000.

21. The false statements and misrepresentations referred to above were made in commerce.

22. The false statements and misrepresentations referred to above were and are likely to cause Plaintiff irreparable harm by sowing confusion in the mind of the public as to the ingredients in CetylMax™; as to the testing which has been performed on CetylMax™; as to which product or products were actually the subject of the Celadrin® studies; and as to the efficacy of Celadrin®. Such confusion will irreparably damage Plaintiff's reputation and the reputation of Celadrin®, the true subject of the Celadrin® Studies.

## IV

## SECOND CAUSE OF ACTION

(Against Defendant FLEXADREN, LLC, and CETYLMAX, LLC for Violations of § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125)

23. Plaintiff incorporates by reference paragraphs 1-22 above as though set forth in full at this point.

24. This action is brought under § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125.

25. Jurisdiction is conferred on this court by § 39 of the Lanham Act, 15 U.S.C.A. § 1121, and by 28 U.S.C.A. § 1338.

26. Commencing on or about June 1, 2005, and continuing to the present, Defendants **FLEXADREN** and **CETYLMAX** have placed commercial advertising concerning the two products, Flexadren™ and CetylMax™, in various publications, including but not necessarily

limited to the websites for both Flexadren™ and CetylMax™. Said Defendants have thereby and otherwise made and continue to make statements likely to mislead consumers into believing that the Celadrin®-containing product Flexadren™, is the same as, and "is now CetylMax™."

27.  Prior to on or about June 1, 2005, for several years, the product Flexadren™ was widely marketed and sold to the general public with the statement that Flexadren™ contained Celadrin's® proprietary blend of cetylated fatty acids as part of Flexadren's™ own formulation. This marketing has led to the perception by the general public, and specifically to customers of **FLEXADREN** and **CETYLMAX**, which perception continues to be held to this day, that purchasers of Flexadren™ or a successor product would be purchasing a product containing Celadrin®.

28.  **CETYLMAX** President, Roger LeFevre, who is also President of **FLEXADREN**, has claimed that, prior to June, 2005, Flexadren™ contained Celadrin®; and that the product CetylMax™ has never contained Celadrin®.

29.  An instance of the Defendants' misleading and false advertising and promotion, which continues to be made as of the date of this Complaint, is the information that is provided to those who go on line to visit either the **FLEXADREN** website or the **CETYLMAX** website, where the initial view presented on both sites is an advertisement which proclaims, "Flexadren™ is now CetylMax™"; after a few moments, the screen dissolves and the viewer is shown the initial page of claims and promotional material for the product CetylMax™ with all its false statements and misrepresentations, as set forth in detail herein. The truth is, "Flexadren™ is not CetylMax™ and never was; CetylMax™ is not "Flexadren™ and never was. Moreover, and critically important, the truth is that CetylMax™, unlike Flexadren™, does not now and never has contained the product which has been tested in the many studies referred to herein: namely, Celadrin®.

30.  The false statements and misrepresentation in commercial advertising or promotion, as referred to with specificity above, were disseminated by Defendants **CETYLMAX** and **FLEXADREN** to their respective customers and to viewers of both the Flexadren™ website

1  and the CetylMax™ website, which customers and viewers were actually deceived or tended to
2  be deceived by it.
3      31. The false statements and misrepresentation in commercial advertising or
4  promotion, as referred to with specificity above, were disseminated by Defendants **CETYLMAX**
5  and **FLEXADREN** to their respective customers and to viewers of both the Flexadren™ website
6  and the CetylMax™ website in a manner which was likely to influence the purchasing decisions
7  of the persons to whom it was disseminated.
8      32. The false statements and misrepresentations referred to above injured Plaintiff by
9  causing Plaintiff to lose customers and sales, resulting in business losses in an amount no less
10 than $1,000,000.
11     33. The false statements and misrepresentations referred to above were made in
12 commerce.
13     34. The false statements and misrepresentations referred to above were and are likely
14 to cause Plaintiff irreparable harm by sowing confusion in the mind of the public as to the
15 ingredients in CetylMax™; as to the testing which has been performed on CetylMax™; as to
16 which product or products were actually the subject of the Celadrin® studies; and as to the
17 efficacy of Celadrin®. Such confusion will irreparably damage Plaintiff's reputation and the
18 reputation of Celadrin®, the true subject of the Celadrin® studies.

### IV

### THIRD CAUSE OF ACTION

(Against All Defendants For Violations of

Business and Professions Code Section 17200)

23     35. Plaintiff incorporates by reference paragraphs 1-34 above as though set forth in
24 full at this point.
25     36. Plaintiff IMAGENETIX is suing in both its personal capacity and on behalf of the
26 general public.
27     37. Beginning at an exact date unknown to plaintiff but at least since June 1, 2005,
28

and continuing to the present, including the date of this Complaint, **CETYLMAX** and **FLEXADREN** (collectively, "Defendant Companies") have committed acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in the following practices: in various publications, as set forth above, Defendant Companies have made statements likely to mislead consumers into believing that the product Flexadren™, containing Celadrin®, is the same as the product CetylMax™, and that CetylMax™ itself has been the subject of product studies reported in peer-reviewed journal articles, when in truth the studies referred to were performed using one product and one product only: Plaintiff's proprietary product Celadrin®, and not CetylMax™.

38. The acts and practices, as described in paragraph 37 above, violate Business & Professions Code section 17200 in the following respects:

    a. Defendant Companies' policy/practice of claiming that "Flexadren™ is now CetylMax™" and the policy/practice of referring to the Celadrin® Studies as if those studies involved CetylMax™ are likely to mislead the general public and, consequently, constitutes fraudulent business acts or practices within the meaning of Business and Professions Code section 17200; and

    b. Defendant Companies' acts of untrue and misleading advertising, as more fully set forth in paragraphs 13, 14 and 29 above, are incorporated herein by this reference and are, by definition, violations of Business and Professions Code section 17200.

39. The unlawful, unfair and fraudulent business practices and false and misleading advertising of the defendants and each of them, as described above, present a continuing threat to members of the public in that Defendants continue to unlawfully disseminate false and misleading information regarding the identity of the product that was the subject of the Celadrin® Studies, with the result that members of the public, particularly those who suffer from osteoarthritis, are likely to purchase and use the product CetylMax™ under the false impression that said product has been proven both safe and efficacious in medical studies, and also has been proven to have beneficial effects in relieving pain and improving the quality of life. The truth is

1 that no such studies have been performed on CetylMax™ and no such 'proofs' exist.

2     40.    As a direct and proximate result of the aforementioned acts, Defendant Companies have wrongfully and unlawfully caused damages to Imagenetix Inc., in an amount no less than $5 million in lost sales, and in an amount no less than an additional $5 million in injury to reputation and goodwill associated with the Celadrin® product.

V

### FOURTH CAUSE OF ACTION

(Against All Defendants for Violations of

Business and Professions Code Section 17500)

    41.    Plaintiff incorporates by reference paragraphs 1-40 above as thought set forth in full at this point.

    42.    Beginning at an exact date unknown to plaintiff but at least since June 1, 2005, and continuing to the present, including the date of the Complaint, Defendant Companies have committed acts of untrue and misleading advertising, as defined by Business and Professions Code section 17500, by engaging in the acts and practices set forth above in paragraphs 13, 14, 29 and 39, and elsewhere herein, with intent to induce members of the public to enter into contracts for the purchase of CetylMax™.

    43.    The acts of untrue and misleading advertising by Defendants described in paragraphs 13, 14, 29 and 39, and elsewhere herein present a continuing threat to members of the public in that Defendants continue to unlawfully disseminate false and misleading information regarding the identity of the product that was the subject of the Celadrin® Studies, with the result that members of the public, particularly those who suffer from osteoarthritis, are likely to purchase and use the product CetylMax™ under the false impression that said product has been proven both safe and efficacious in medical studies, and also has been proven to have beneficial effects in relieving pain and improving the quality of life. The truth is that no such studies have been performed on CetylMax™ and no such 'proofs' exist. Plaintiff and other members of the general public have no other adequate remedy of law in that the Defendants, and each of them,

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**      13

unless enjoined by this court, will continue to engage in untrue or misleading advertising, as alleged above, in violation of California Business & Professions Code Section 17500, et seq.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them on the counts set forth above as follows:

1. Pursuant to Business and Professions Code section 17203 and 17535, and to §43(a) of the Lanham Act, 15 U.S.C.A. §1125, and to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from making, disseminating, or causing to be made or disseminated before the public in any manner whatsoever, the unlawful representations detailed herein and in any other manner that such misrepresentations have been or continue to be published by defendants, including any and all misleading advertising promoting Defendant Companies' products by studies performed on Celadrin®.

2. Pursuant to Business and Professions Code section 17203 and 17535, and pursuant to the equitable powers of this Court, plaintiff prays that defendants be ordered to restore to the general public all funds acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business and Professions Code section 17200 et seq., or untrue or misleading advertising under section 17500 et seq.

3. Compensation to Plaintiff in the amount of $1,000,000, representing profits earned by defendant through its misrepresentation.

4. Compensation to Plaintiff in the amount of $1,000,000 for Plaintiff's lost profits.

5. Compensation to Plaintiff in the amount of $500,000 for expenses incurred by Plaintiff in counteracting the effects of Defendants' misrepresentation.

6. For attorneys' fees pursuant to Code of Civil Procedure §1021.5;

7. For costs of suit incurred herein; and

8. For such other and further relief, including punitive damages, as the Court may

1 | deem just and proper.

2

3

4

5 | DATED: July 28, 2008

Submitted by,

SHUSTAK FROST & PARTNERS, P.C.

_____
ERWIN J. SHUSTAK

401 West "A" Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

Attorney for Plaintiff Imagenetix, Inc.

```
         UNITED STATES
         DISTRICT COURT
       SOUTHERN DISTRICT OF CALIFORNIA
            SAN DIEGO DIVISION

       # 153476      - TC

        July 29, 2008
          15:02:20


         Civ Fil Non-Pris
   USAO #.: 08CV1369
   Judge..: LARRY A BURNS
   Amount.:              $350.00 CK
   Check#.: BC4385



       Total-> $350.00



   FROM: IMAGENETIX
         VS
         CETYLMAX
```

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**
08 JUL 29 PM 3:01
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**'08 CV 1369 LAB WMc**

## I. (a) PLAINTIFFS
Imagenetix, Inc., a Nevada Corporation

**DEFENDANTS**
Cetylmax, LLC, a Utah Limited Liability Company;
Flexadren, LLC, a Utah Limited Liability Company

(b) County of Residence of First Listed Plaintiff: San Diego, California
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Salt Lake, Utah
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address and Telephone Number)
Erwin J. Shustak (119152) and Thomas C. Frost (185187)
SHUSTAK FROST & PARTNERS, P.C.
401 West A. Street Suite 2330, San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice ☐ 365 Personal Injury - Product Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability |  | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS -Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application |  |  |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  |  |  | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Lanham Act - 15 U.S.C. 1111 et seq. 15:1125

Brief description of cause:
False Advertising

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Greater than $75,000 to be determined at trial

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE: July 29, 2008

SIGNATURE OF ATTORNEY OF RECORD: Erwin J. Shustak, Esq.

FOR OFFICE USE ONLY
RECEIPT # 153476    AMOUNT $350    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

TAC 7/29/08



American LegalNet, Inc. | www.FormsWorkflow.com

CR